UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TABITHA NEWTON,

      Plaintiff,                  CASE NO.:

vs.

INNOVACARE PARTNERS,
LLC, a Foreign Limited
Liability Company,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff TABITHA NEWTON, by and through her undersigned counsel, brings this action against Defendant INNOVACARE PARTNERS, LLC, a Foreign Limited Liability Company, and states as follows:

## INTRODUCTION

This is an action for damages and all available relief based on race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (collectively "Title VII"), the Florida Civil Rights Act §§ 760.01-760.11, Florida Statutes ("FCRA"), and the Florida Whistleblower Act, Florida Statute §448.102 (FWA). As a result and for the violation of Plaintiff's rights to be free from racial discrimination as well as retaliation and to recover front pay, back pay, an

equal amount as liquidated damages, reinstatement, lost benefits, compensatory damages, emotional distress damages, pain and suffering, injunctive relief, reasonable attorneys' fees and costs and any other relief to which the Plaintiff is entitled, including but not limited to, equitable relief.

## JURISDICTION AND VENUE

1.     Jurisdiction of this matter arises pursuant to 28 U.S.C. §1331 with federal questions involving Title VII. An express grant of federal court jurisdiction over this federal claim is found in Title VII at 42 U.S.C.§2000e-5(f)(3).

2.     This Court has supplemental jurisdiction over Plaintiff's state law claims.

3.     This Court has jurisdiction over Plaintiffs' claims because at all times material to this Complaint, Plaintiff worked for Defendants in Orlando, Orange County, Florida.

4.     The illegal conduct occurred within the judicial district in and for this District.

5.     Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on April 22, 2024.

6.     On December 2, 2024, the EEOC issued its right-to-sue letter.

7.     Therefore, this Complaint is filed within 90 days of Plaintiff

receiving her right-to-sue letter.

## PARTIES

8.    Plaintiff is an adult individual who resides in Orlando, Orange County, Florida.

9.    At all times material hereto, Plaintiff worked for Defendant in Orlando, Orange County, Florida.

10.    Defendant is and was, at all relevant times, a Foreign Limited Liability Company, operating in Orange County, Florida and is within the jurisdiction of this Court and this District.

11.    Defendant was an employer as defined by the laws under which this action is brought and employs greater than 15 employees.

## STATUTORY PREREQUISITES

12.    Plaintiff is an African American female individual who suffered discrimination based on her race, and color.

13.    Plaintiff is a member of a class of individuals protected by Title VII and the FCRA.

14.    Plaintiff was qualified for her position as a Human Resources Business Partner.

15.    The Defendant meets the statutory criteria for coverage as an "employer" under Title VII and the FCRA.

16.    Plaintiff meets the statutory criteria for coverage as an

3

"employee" under Title VII and the FCRA.

17.    Plaintiff timely filed her Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 22, 2024.

18.    On December 2, 2024, the EEOC issued its right-to-sue letter. Therefore, this Complaint is being filed within 90 days of Plaintiffs receiving their right-to-sue letter.

19.    Accordingly, Plaintiff has complied with all other requirements and all other prerequisites prior to bringing this lawsuit.

## FACTS

20.    Plaintiff was employed by Defendant from October 2, 2023, until December 13, 2023.

21.    At all times material, Plaintiff was employed as a Human Resources Business Partner with the Defendant.

22.    Plaintiff had no discipline or performance issues and performed her job in an outstanding manner.

23.    Plaintiff initially applied for the Human Resources Generalist position on September 13, 2023.

24.    After two rounds of interviews, Plaintiff was offered the position on September 20, 2023.

25.     However, when Plaintiff began her employment on October 2, 2023, she was surprised to learn that her position had changed to Human Resources Business Partner.

26.     Plaintiff learned that Defendant made the decision to change her job title because of Plaintiff's work experience, employee relations background, and because of how well she performed during the interview.

27.     Two other individuals, Kathleen Nicolello and Darren Nobleza, both White, started with the Company on the same date as Plaintiff.

28.     Both Nicolello and Nobleza received workday training, but Plaintiff did not.

29.     Plaintiff complained to her manager, Jessica Oreste, about not receiving workday company training as the White new hires did.

30.     In addition to not receiving workday training, Nadia, who was the benefits specialist, refused to meet with Plaintiff to discuss her benefits as she did with the two White new hires.

31.     Plaintiff again complained to Oreste about this disparity and all she offered was for Plaintiff to start documenting the occurrences.

32.     In connection with her HR duties, Plaintiff was advised by Luella and Dr. Dane Parker during the onsite meeting that Dr. Torres, who worked at the Titusville location, had been seen drinking during lunch and then reporting back to work.

33. Drinking during the workday and continuing to perform your job is a violation of company policy, not to mention, extremely dangerous.

34. As a result of this troubling report, Plaintiff requested that she be allowed to visit the Titusville location to observe the situation for herself.

35. On October 30, 2023, Plaintiff learned that applicant Amber Farace was not hired for the role of medical assistant because she was newly divorced.

36. If this was the reason Ms. Farace did not receive a new role, it would have been a violation of Defendant's policies and Plaintiff requested that she be allowed to investigate the situation, but her request was ignored.

37. On November 1, 2023, Plaintiff arrived at the Titusville location where she initially met with Luella and Bridget, and both had advised Plaintiff that Dr. Torres was in a "mood."

38. Dr. Torres initially refused to meet with Plaintiff.

39. However, Plaintiff then had Bridget take her to see Dr. Torres so that she could properly introduce herself and to specifically request to meet with him for 15 minutes.

40. He agreed and Plaintiff then sat with him and began to address the allegation of his drinking during lunch hours concerns.

41. Dr. Torres denied drinking on the job and stated that "they told all lies and if anyone is drinking it is Luella."

6

42. After this meeting, Plaintiff then sent an email to Oreste, Dr. Parker and Sissy, regarding her meeting with Dr. Torres and she requested that Dr. Torres submit to a random drug screen.

43. On November 7, 2023, Plaintiff attended an HR Team meeting and observed that a job posting appeared to be discriminatory as it required that all applicants speak Spanish.

44. Plaintiff believed that Defendant's poster was illegal and a violation of the law.

45. As a result, Plaintiff suggested the job posting be changed so that it is more compliant with the law, including Equal Employment Opportunity Commission regulations.

46. They both disagreed with my assertion but still refused to change the job posting.

47. On November 8, 2023, Plaintiff advised Cynthia Negro that an applicant, Wendy Vasquez, did not meet the minimum job description requirements because she did not have a current Licensed Clinical Social Worker ("LCSW") license and therefore, she rescinded the job offer.

48. Rather continue the search for a qualified applicant, Sissy changed the job description to state that a LCSW was preferred, not required

49. I objected to this decision because it was potentially discriminatory and could expose the Company to liability.

7

50. On November 14, 2023, Sissy called Plaintiff to discuss how the team felt about Plaintiff allegedly "calling them out," during a team chat meeting.

51. On November 16, 2023, Plaintiff complained again to Oreste regarding her conversation with Sissy and the fact that her objections regarding the Company's discriminatory policies were an issue.

52. Oreste again only advised Plaintiff to continue documenting all interactions.

53. During the next HRBP team call on November 22, 2023, Carmen and Natasha stated that they would hold an employee's last checks if they did not return company equipment.

54. Plaintiff advised them that Florida law state's that an employer cannot hold an employee's final paycheck until the employee returns company equipment.

55. They disregarded Plaintiff's objection and carried out their illegal scheme.

56. On November 27, 2023, Plaintiff had another one on one with Oreste where the agenda was to discuss what to do going forward with Dr. Torres; the termination of Belinda Saunders; age discrimination after receiving I9 for Dr. Hernandez; reminder of Plaintiff's PTO from December 5, 2023, to December 8, 2023, and the job description for Wendy Vasques.

57.    Despite my complaints, the only thing Oreste offered was to continue documenting these issues.

58.    On November 30, 2023, I was requested to attend a meeting between Dr. Adam Parker and an employee he was allegedly having performance issues with, Belinda Saunders.

59.    Apparently, Ms. Saunders was mis-charting patient information in their charts.

60.    Plaintiff arrived at the Winter Haven location to meet with Dr. Parker to discuss Ms. Saunder's performance issues.

61.    The Plaintiff informed Dr. Parker that she was tasked with reviewing all the mis-charting of patient's files.

62.    However, much to Plaintiff's surprise, Dr. Parker advised that he had already spoken with Dr. Adler and that they made the decision that they would rather terminate Ms. Saunders immediately and offer her a severance package.

63.    Following her initial briefing with Parker, they met with Ms. Saunders.

64.    Plaintiff had not met Ms. Saunders and was surprised to learn she was an African American women.

65.    After the introductions were made, Dr. Parker advised Ms. Saunders that she was being terminated due to an unsigned PIP in her file regarding patient mis-charting.

66.    Ms. Saunders attempted to provide a response to the allegation, but Plaintiff interrupted her stating that the decision had already been made.

67.    Dr. Parker further went on to say that he would write her a letter of recommendation if she resigned rather than be fired.

68.    Ms. Saunders did express that she was not aware of a PIP and requested to review it.

69.    Plaintiff was shocked to hear Dr. Parker admit that he had never provided Ms. Saunders a PIP and stated in response; "my bad I dropped the ball on that."

70.    Plaintiff immediately became concerned that Ms. Saunders' termination was not appropriate as Dr. Parker referenced a disciplinary action that Saunders knew nothing about, and Dr. Parker admitted to not delivering to Plaintiff.

71.    Plaintiff was also concerned that because Ms. Saunders was African American, Plaintiff was being used to cover for racial discrimination.

72.    Nonetheless, Ms. Saunders made the decision to resign rather than be terminated.

73.    Because of her concern regarding Ms. Saunders'[ termination, Plaintiff spoke with Dr. Parker following Ms. Saunders' exit from the meeting and Plaintiff asked him why he initially informed her that Ms. Saunders was aware of the PIP and why would he offer to write a letter of recommendation only if she agreed to resign, because it appeared contradictory to write someone a letter of recommendation if they were a poor performer especially if they were mis-charting patient files.

74.    Dr. Parker did not provide a response but became extremely agitated at Plaintiff's inquiry and her obvious suggestion that racial discrimination may have led to Ms. Saunders' termination.

75.    Thereafter, Plaintiff received a call from Dr. Adler regarding how the meeting went.

76.    Plaintiff discussed the meeting with Dr. Adler and shared her concern that Ms. Saunders may have been terminated because of race discrimination.

77.    Following the incident with Ms. Saunders where Plaintiff believed she was being used to cover for racial discrimination, Plaintiff received a comment from Nobleza, who is Caucasian and stated," oh of all the Human Resources Business Partners and they hire the black lady to do their dirt.

78.    Later that evening, when Plaintiff arrived home, Plaintiff spoke with Oreste and complained that she believed she was being used to to cover

for racial discrimination against Ms. Saunders, and Oreste only responded with, "just keep documenting."

79.    On December 11, 2023, Plaintiff had a meeting with Maria regarding Dr. Hernandez's termination.

80.    Plaintiff explained to Maria that she believed Dr, Hernandez's termination might violate laws against age discrimination.

81.    Two days later, on December 13, 2023, Plaintiff was terminated from her employment with Defendant.

82.    The Company's reason for her termination was allegedly because the position was eliminated.

83.    However, Defendant's reason for Plaintiff's termination is false and a pretext for racial discrimination and retaliation.

84.    Indeed, Plaintiff objected to or refused to participate regarding numerous illegal and discriminatory practices with the Company and after her many complaints, Plaintiff was summarily terminated for those discrimination complaints.

## COUNT I
## RACE DISCRIMINATION UNDER TITLE VII

85.    Plaintiff reincorporate and adopt all allegations contained within paragraphs 1 through 84 above.

86.    Defendant discriminated against Plaintiff based on her race.

12

87.    Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff as set forth above.

88.    Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

89.    The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

      a.    Back pay and benefits;

      b.    Interest on back pay and benefits;

      c.    Front pay and benefits;

      d.    Compensatory damages for emotional pain and suffering;

      e.    Injunctive relief;

      f.    Prejudgment interest;

      g.    Costs and attorney's fees; and

      h.    Such other relief as the Court may deem just and proper.

## COUNT II
## RACE RETALIATION UNDER TITLE VII

90. Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 84 above.

91. Defendant retaliated against Plaintiff because of her complaints about race discrimination.

92. Plaintiff engaged in a protected activity by making numerous verbal and written complaints to Defendant regarding race discrimination.

93. Plaintiff suffered an adverse action after reporting to Defendant the unlawful conduct.

94. Defendant engaged in unlawful employment practices prohibited by Title VII by retaliating against Plaintiff as set forth above.

95. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

96. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and

14

equitable relief allowed by law including:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages for emotional pain and suffering;

      e.     Injunctive relief;

      f.     Prejudgment interest;

      g.     Costs and attorney's fees; and

      h.     Such other relief as the Court may deem just and proper.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF FCRA

97. Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 84 above.

98. Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

99. Defendant discriminated against Plaintiff based on her race.

100. Defendant engaged in unlawful employment practices prohibited by the FCRA by discriminating against Plaintiff as set forth above.

101. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

102. At all material times, Plaintiff was qualified to perform her job

15

duties.

103. Defendant discriminated against Plaintiff because of her race.

104. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

105. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

    a.    Back pay and benefits;

    b.    Interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering;

    e.    Injunctive relief;

    f.    Prejudgment interest;

    g.    Costs and attorney's fees; and

    h.    Such other relief as the Court may deem just and proper.

## COUNT IV
## RACE RETALIATION IN VIOLATION OF FCRA

106. Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 84 above.

107. Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

108. At all material times, Plaintiff was qualified to perform her job duties.

109. Defendant retaliated against Plaintiff because of her complaints about race discrimination.

110. Plaintiff engaged in a protected activity by making numerous verbal and written complaints to Defendants regarding race discrimination.

111. Defendant engaged in unlawful employment practices prohibited by the FCRA by retaliating against Plaintiff as set forth above.

112. The above retaliation was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

     a.     Back pay and benefits;

     b.     Interest on back pay and benefits;

     c.     Front pay and benefits;

     d.     Compensatory damages for emotional pain and suffering;

     e.     Injunctive relief;

     f.     Prejudgment interest;

     g.     Costs and attorney's fees; and

     h.     Such other relief as the Court may deem just and proper.

**COUNT V**
**DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981**

113.  Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 84 above.

114.  Plaintiff is an African American female individual and therefore a member of the protected class and/or is non-white as set forth in and pursuant to 42 U.S.C. §1981.

115.  At all times material, Plaintiff was an employee of the Defendant.

116.  At all times material, Defendant through its agents, representatives and employees, who were acting in the course and scope of their employment, was/is an employer within the meaning of Section 1981.

18

117.    Defendant deprived Plaintiff of her civil rights under 42 U.S.C. § 1981 by discriminating against Plaintiff with respect to the benefits, rights, privileges, terms and conditions of her employment by discriminating against Plaintiff with the specific purpose of humiliating, embarrassing, ostracizing and causing Plaintiff further harm and with the purpose of adversely affecting Plaintiff's ability to gain future and further employment.

118.    Defendant has never on any other occasions acted in such a manner with white former or current employees who have entered into such or similar employment-related contract(s), agreements or relationships with the Defendant.

119.    Pursuant to 42 U.S.C. §1981(a), "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

120.    Pursuant to 42 U.S.C. §1981 (b), "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

121. Based on the foregoing allegations as set forth above, the Defendant violated Plaintiff's civil rights under 42 U.S.C. §1981 by discriminating against Plaintiff in the making and enforcement of her employment contract and employment relationship, including the performance, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and the Defendant.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

    a.    Back pay and benefits;

    b.    Interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering;

    e.    Non-pecuniary damages afforded under Section 1981;

    g.    Costs and attorney's fees; and

    h.    Such other relief as the Court may deem just and proper.

## COUNT VI
## RETALIATION IN VIOLATION OF 42 U.S.C. §1981

122. Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 84 above.

123.    Plaintiff is an African American female individual and therefore a member of the protected class and/or is non-white as set forth in and pursuant to 42 U.S.C. §1981.

124.    At all times material, Plaintiff was an employee of the Defendant.

125.    At all times material, Defendant through its agents, representatives and employees, who were acting in the course and scope of their employment, was/is an employer within the meaning of Section 1981.

126.    Defendant deprived Plaintiff of her civil rights under 42 U.S.C. § 1981 by discriminating and retaliating against Plaintiff with respect to the benefits, rights, privileges, terms and conditions of her employment by discriminating and retaliating against Plaintiff with the specific purpose of humiliating, embarrassing, ostracizing and causing Plaintiff further harm and with the purpose of adversely affecting Plaintiff's ability to gain future and further employment.

127.    Defendant has never on any other occasions acted in such a manner with white former or current employees who have entered into such or similar employment-related contract(s), agreements or relationships with the Defendant.

128.    To this end, Plaintiff engaged in protected activity by complaining of disparate treatment.

129.    Plaintiff suffered an adverse action.

21

130.   Pursuant to 42 U.S.C. §1981(a), "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

131.   Pursuant to 42 U.S.C. §1981 (b), "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

132.   Based on the foregoing allegations as set forth above,, Defendant violated Plaintiff's civil rights under 42 U.S.C. §1981 by discriminating and retaliating against Plaintiff in the making and enforcement of her employment contract and employment relationship, including the performance, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and the Defendant.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

     a.     Back pay and benefits;

     b.     Interest on back pay and benefits;

    c.     Front pay and benefits;

    d.     Compensatory damages for emotional pain and suffering;

    e.     Non-pecuniary damages afforded under Section 1981;

    f.     Costs and attorney's fees; and

    g.     Such other relief as the Court may deem just and proper.

## COUNT VII
## VIOLATION OF FLORIDA WHISTLEBLOWER ACT

133.   Plaintiff reincorporates and adopts all allegations contained within paragraphs 1 through 84 above.

134.   Plaintiff was terminated by the Defendant in retaliation due to Plaintiff's objecting to violations of a law, rule, or regulation as described above, in violation of Florida Statutes §448.103(3).

135.   As a direct and proximate result of the Defendants' action described herein, Plaintiff is entitled to relief pursuant to Florida Statutes §448.103(2) as follows:

    a.     An injunction restraining continued violation of this act.

    b.     Reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position.

    c.     Reinstatement of full fringe benefits and seniority rights.

    d.     Compensation for lost wages, benefits, and other remuneration.

23

e.  Any other compensatory damages allowable at law.

136.  Plaintiff is entitled to reasonable attorney's fees pursuant to Florida Statutes §448.104.

WHEREFORE, Plaintiff demands judgment against Defendants, for damages together with interest, reasonable attorney's fees and costs incurred in this action, and any and all further relief that this Court determines to be just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated this 17th day of January, 2025.

Respectfully submitted,

*/s/ Anthony J. Hall*
Anthony J. Hall, Esq. – LEAD COUNSEL
FL Bar No. 40924
THE LEACH FIRM, P.A.
1560 N Orange Avenue, Suite 600
Winter Park, Florida 32789
Telephone: (407) 574-4999
Facsimile: (833) 523-5864
Email: ahall@theleachfirm.com
Email: aperez@theleachfirm.com
*Attorneys for Plaintiff*

24